ORIGINAL

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INDORAMA CHEMICALS (THAILAND) LTD., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant ) <br> ) | Court No. 01-00305 |

COMPLAINT

Plaintiff, Indorama Chemicals (Thailand) Ltd., by its attorneys, hereby allege as follows:

Jurisdiction

1. This action is brought pursuant to Section 516A(a)(2)(A)(i)(I) of the Tariff Act of 1930, as amended, 19 U.S.C. §1516a(a)(2)(A)(i)(I) (the "Act"), and pursuant to 28 U.S.C. §§ 1581(c) and (i). Plaintiff contests certain aspects of the final determination of the United States International Trade Commission ("the Commission") in Furfuryl Alcohol From China and Thailand, 66 Fed. Reg. 21015, (April 26, 2001) relating to imports of furfuryl alcohol ("FA" or "subject imports") from Thailand. Plaintiff states and alleges that the Commission acted without support of substantial evidence on the record and in a manner not in accordance with law in

-4-

determining that revocation of the antidumping duty order on subject imports from Thailand would likely lead to a continuation or recurrence of material injury to a U.S. industry in the foreseeable future.

### Standing of Plaintiff

2. Plaintiff Indorama Chemicals (Thailand) Ltd. is a foreign producer and exporter of FA from Thailand under the antidumping order which as the subject of the final determination referenced in paragraph 1. Plaintiff therefore is an interested party within the meaning of Section 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§1677(9)(A) and 1516a(f)(3), and, as a party to the administrative proceeding from which this matter arises, has standing to bring this action under 28 U.S.C. §2631(c).

### Timeliness of Action

3. The final determination being challenged in this action was published in the Federal Register on April 26, 2001, 66 *Fed. Reg.* 21015. This action therefore has been timely commenced pursuant to 19 U.S.C. §1516a(a)(2)(A), 28 U.S.C. §2636(c), and Rule 6(a) of the Rules of the U.S. Court of International Trade.

### Statement of the Claim

4. On April 20, 2001, the Commission issued its determination on the basis of the record developed in the five-year reviews of <u>Furfuryl Alcohol from China and Thailand</u> that revocation of the antidumping duty order on subject imports from Thailand would likely lead to a continuation or recurrence of material injury to a domestic industry in the United States within a reasonably foreseeable time.

5. As set forth in the views of the Commission, in making this determination, the Commission found that subject imports from either China or Thailand would not be likely to have

no discernable adverse impact on the domestic industry if the antidumping orders on subject imports from these countries were revoked. The Commission also found a reasonable overlap of competition between the subject imports and the domestic like product likely would exist if the orders were revoked and that the subject imports would likely compete in the U.S. market under generally similar conditions of competition. As a result, the Commission exercised its discretion to cumulate the likely volume and price effects of subject imports from China and Thailand.

6. The Commission found that on a cumulated basis, subject imports have remained substantially below the levels they attained during the original investigation and that revocation of the orders, which caused cumulated imports to decline since the time of the original investigations, would create an incentive for subject producers to shift or continue to shift exports from third countries to the United States, and accordingly found the likely volume of cumulated subject imports from China and Thailand would be significant within a reasonably foreseeable time.

7. The Commission found unit values of subject imports from Thailand were consistently lower than the domestic like product throughout the period of review and concluded that if the orders were revoked the cumulated subject imports would be priced at levels that would likely have significant price depressing or suppressing effects on the domestic like product.

8. The Commission found the domestic industry is not currently in a weakened condition of vulnerability as contemplated by the vulnerability criterion of the statute, but concluded that revocation of the antidumping duty orders on subject imports from China and Thailand would likely lead to significant increases in the volume of cumulated imports at prices that would likely undersell the domestic product and significantly depress or suppress U.S. prices. The Commission further found the volume and price effects of cumulated subject imports would have

a likely significant negative impact on the domestic industry's prices and would likely cause the domestic industry to lose market share.

9. The Commission's determination that revocation of the antidumping duty order against subject imports from Thailand would be likely to result in a continuation or recurrence of material injury to a domestic industry within a reasonably foreseeable time is unsupported by substantial evidence on the record, or otherwise not in accordance with law, in:

    a. determining that subject imports from Thailand would not be likely to have no discernable adverse impact on the domestic industry if the Order against subject imports from Thailand were revoked when the evidence of record showed that subject imports from Thailand. already had resumed to the US market despite the order, that the Thai industry had a stable global customer base, and that the industry in Thailand has been operating at, or virtually at, capacity;

    b. finding a reasonable overlap of competition between the subject imports from Thailand and the domestic like product likely would exist if the order were revoked when the evidence showed no such overlap of competition with subject imports from Thailand.

    c. finding that the subject imports from Thailand and China will compete under generally similar conditions of competition when the evidence showed that the low antidumping duties on subject imports from Thailand had not been a barrier to subject imports from Thailand and that no subject imports had entered the United States from China following the imposition of antidumping duties ranging from 43.27 percent to 50.43 percent;

    d. finding that the subject imports from Thailand and China will compete under generally similar conditions of competition when the evidence showed the industry in Thailand producing subject imports consisted of a single company operating at, or virtually at, capacity, while the industry in China consisted of an undetermined number of producers with substantial

excess capacity;

  e. finding that the subject imports from Thailand and China will compete under generally similar conditions of competition when the evidence showed: 1) that imports of subject merchandise from Thailand were sold to large end users which typically buy in containers of 40,000 pounds or more ; 2) that the domestic like product was sold exclusively in 500 pound drums; and 3) that subject imports from China were sold during the original investigation, and currently were being offered, in 500 pound drums;

  f. finding that subject imports have remained substantially below the levels the cumulated imports attained during the original investigation, when the evidence showed the level of subject imports from Thailand subsequent to the imposition of the antidumping order was above the level of subject imports from Thailand attained during the original investigation;

  g. cumulating subject imports from China with subject imports from Thailand in determining the likely volume of subject imports would be significant within a reasonably foreseeable time if the orders are revoked when the evidence showed subject imports from the industry in Thailand producing subject merchandise consisted of a single company operating at, or virtually at, capacity, while the industry in China consisted of an undetermined number of producers with substantial excess capacity;

  h. finding price underselling of subject imports from Thailand by comparing prices of domestic like product sold in small quantities in drums to distributors with prices of subject imports from Thailand sold in large volumes to large volume end-users;

  i. concluding that price was an important factor among smaller purchasers when the evidence showed a substantial portion of sales of the domestic like product were sold at constant prices between 1998 and 2000 and when there was no evidence of price depression or

suppression caused by subject imports from Thailand;

j. not considering evidence on the record that 1) at the end of 1997, subsequent to the issuance of the subject antidumping duty order but prior to the resumption of subject imports from Thailand, the sole producer of the domestic like product, Great Lakes Chemical Corporation ("GLCC"), announced it was exiting the market for sales of the domestic like product as part of a restructuring plan because market conditions unrelated to imports had changed to the extent that returns on sales of the domestic like product were not commensurate with GLCC's other businesses; 2) in 1998, subsequent to GLCC exiting the market, non-subject imports entered the U.S. market at levels many times that of subject imports from Thailand at any time during the original investigation or the period of review; 3) in July 1999, after subject imports from Thailand returned to the U.S. market, the current owners of these facilities acquired them with the stated intention of producing highly profitable derivative products rather than for sales of the domestic like product for the commercial market; 4) since the acquisition of these assets the domestic producer has used an increasing portion of its domestic like product for internal consumption, reducing its commercial sales of the domestic like product; and 5) in 2000 subject and non-subject imports combined were lower than in 1999 despite lower commercial sales by the domestic producer because of a tolling agreement entered into by the domestic producer;

k. concluding that in the reasonably foreseeable future the domestic industry and the subject imports from Thailand are likely to compete directly for sales to end users when imports from Thailand are sold exclusively to large end users; when the domestic producer has never sold domestic like product to these end users; when the domestic industry cannot supply large end users; when the domestic industry's existing operating margin as a percentage of net sales is strong; and when there is no evidence that either the domestic producer or its toll

customer has an interest in ending their tolling arrangement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests this court hold the Commission's determination that revocation of the antidumping duty order on subject imports from Thailand would likely lead to a continuation or recurrence of material injury in the foreseeable future to be unsupported by substantial evidence on the record or otherwise not in accordance with law; require that the Commission not cumulate subject imports from Thailand with subject imports from China; determine that revocation of the antidumping duty order on subject imports from Thailand will not likely lead to a continuation or recurrence of material injury to a domestic industry in the foreseeable future; and grant such other relief as the court deems just and proper.

Respectfully Submitted,

*[signature]*

Martin J. Lewin, Esq.
Adam S. Apatoff, Esq.
Kalik Lewin
5247 Wisconsin Ave NW # 5
Washington DC 20015
(202) 537-2290

Attorneys for Plaintiff

Date: May 23, 2001

## CERTIFICATE OF SERVICE

I, Adam S. Apatoff, hereby certify that a copy of the attached submission was served on May 23, 2001 in accord with the Rules of the Court of International Trade on the following:

### On behalf of Defendant United States

Joseph Liebman
Attorney-In- Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, New York  10278

### On behalf of Penn Specialty Chemicals, Inc.

Christopher R. Wall, Esq.
PILLSBURY WINTHROP, LLP
1133 Connecticut Avenue, N.W.
Washington, DC  20036

### On behalf of Harborchem and Illovo Sugar Limited

Matthew M. Nolan, Esq.
MILLER & CHEVALIER
855 Fifteenth Street, N.W.
Suite 900
Washington, DC  20005-5701

### On behalf of Chinese Respondents

Kieran Sharpe, Esq.
AITKEN IRVIN BERLIN & VROOMAN, LLP
666 Eleventh Street, N.W.
Third Floor
Washington, DC 20001

_____
Adam S. Apatoff

RECEIVED & FILED

2001 MAY 29  P 3: 20

U.S. COURT OF
INTERNATIONAL TRADE
LEO M. GORDON, CLERK

IN ACCORDANCE WITH THE PROVISION OF RULE 5(e). THIS PAPER IS DEEMED FILED AS OF THE DATE OF MAILING- TO WIT  5/24/01